UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LANCE R. BISHOP, SR.,

                                  Plaintiff,

                                                         9:24-cv-1549
v.                                                       (DNH/CBF)

CORRECTIONAL OFFICER BEVERLY EMERSON,

                                  Defendant.

_____

APPEARANCES:                              OF COUNSEL:

LANCE R. BISHOP, SR.
*Plaintiff, pro se*
09-B-1765
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

HON. LETITIA JAMES                        ELIZABETH LOMBARDI, ESQ.
New York State Attorney General
*Attorney for Defendant*
300 South State Street, Suite 300
Syracuse, New York 13202


**CARLA B. FREEDMAN**, United States Magistrate Judge

## DECISION AND ORDER

## I.      BACKGROUND

Presently before the Court in this First Amendment retaliation claim is Plaintiff's motion

to compel discovery.  Dkt. No. 33.  The Defendant opposes the motion.  Dkt. No. 35.  For the

following reasons, the motion is denied.

## II.    LEGAL STANDARD

"In general, a party may obtain discovery of any non-privileged matter that is relevant to a claim or defense of any party and proportional to the needs of the case." *Johannes v. Lasley*, No. 17-CV-3899 (CBA) (AYS), 2019 WL 1958310, at *3 (E.D.N.Y. May 2, 2019) (citing Fed. R. Civ. P. 26(b)(1)). "Nonetheless, a court has discretion to circumscribe discovery even of relevant evidence by making any order which justice requires 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Id.* (citing Fed. R. Civ. P. 26(c)(1) and *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

Specifically, Rule 26(b) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevance" under Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978); *Barrett v. City of N.Y.*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable").

However, even if the discovery sought by a party is found to be relevant, this Court must still weigh that party's right to obtain the discovery against the burden imposed on the party from whom the discovery is sought. *See Warnke v. CVS Corp.*, 265 F.R.D. 64, 69 (E.D.N.Y. 2010)

(citing *Mirkin v. Winston Res., LLC*, No. 07-CV-02734, 2008 WL 4861840, at *1 (S.D.N.Y. Nov. 10, 2008)). "Because '[t]he trial court is in the best position to weight fairly the competing needs and interest of parties affected by discovery,' Rule 26 confers broad discretion to weigh discovery matters." *Id.* (citations omitted). As of 2015, the Rule is intended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse" by emphasizing the need to analyze proportionality before ordering production of relevant information. Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment. The burden of demonstrating relevance remains on the party seeking discovery, and the newly revised rule "does not place on the party seeking discovery the burden of addressing all proportionality considerations." *Id.* "Once relevance has been shown, it is up to the responding party to justify curtailing discovery." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012). Moreover, a court may issue an order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense . . . ." *Id.* (citing Fed. R. Civ. P. 26(c)).

## III.    DISCUSSION

The factual background of this matter is set forth at length in District Judge David N. Hurd's Decision and Orders dated January 30, 2025, and September 18, 2025, and will not be repeated here. *See generally* Dkt. Nos. 5, 20.

Briefly, the events at issue underlying Plaintiff's sole surviving claim involve a grievance Plaintiff filed on September 20, 2024, against Defendant Correctional Officer Beverly Emerson[1] after she refused to give Plaintiff a typewriter that had been sent to him because the value of the typewriter exceeded $350.00. Plaintiff alleged in his grievance that DOCCS Directive 4911

---

[1] As relevant here, the Defendant was the "Package Room Officer" at the Cayuga Correctional Facility.

prohibits inmates from possessing typewriters if the value exceeds $370.00, but the typewriter that was shipped to him was valued at $359.00.  The Inmate Grievance Review Committee granted Plaintiff's grievance, and the Defendant subsequently returned the typewriter to Plaintiff.  Dkt. No. 20 at 7.  Thereafter, on November 12, 2024, two packages arrived for Plaintiff at the facility, but the Defendant returned the packages to the sender(s) even though Plaintiff was permitted to have the items pursuant to Directive 4911.  Dkt. No. 5 at 5.  These allegations form the basis of Plaintiff's First Amendment retaliation claim against Defendant.

Plaintiff has filed his motion to compel Defendant to provide Plaintiff with a copy of DOCCS Directive 4900.  Dkt. No. 33 at 2.  The Defendant opposes the motion because the material (Directive 4900) is protected by penological interests and presents a security risk.  *See generally* Dkt. No. 35.  More specifically, Directive 4900 is labeled as a "D" directive which is defined as "[d]irectives containing information affecting the safety and security of correctional facilities or community supervision operations… [and] shall be handled as confidential material and restricted from unauthorized access."  *Id*. at 1 (*citing* DOCCS Directive No. 001.6.H.).  The Defendant also argues in her response to the motion to compel that Directive 4900 is not relevant to Plaintiff's claim, and, lastly, that Plaintiff's demand for this material is not proportional to the needs of this case.  *Id*. at 2-3.  The Court agrees.

The Defendant has provided the Court with a copy of Directive 4900 for an *in camera* review.  Upon an *in camera* review of Directive 4900, the Court finds that it pertains to DOCCS procedures regarding security in and around gates, gate areas, and secure posts, and is clearly sensitive information.  Moreover, the Court finds no relevant or discoverable information contained in it that pertains to Plaintiff's claim of retaliation.

In support of his motion to compel, Plaintiff states, "The Directive sought by the plaintiff is relevant to the claims and defenses in this case."  Dkt. No. 33 at 13.  However, other than this conclusory statement, Plaintiff offers no explanation as to how Directive 4900 is relevant to his claim of retaliation, nor relevant to any defense he intends to proffer.

Additionally, given the highly sensitive nature of the information contained in Directive 4900, coupled with the fact that as a "D" directive it is accessible only to "Central Office holders of the manual, facility Superintendents, Regional Directors and Bureau Chiefs" (*see* Dkt. 35, p.1 *citing* DOCCS Directive No. 001.6.H), Plaintiff's demand for the document is not proportional to the needs of this case.

Plaintiff cites to *Wright v. Goord*, No. 04-cv-6003L, 2008 WL 2788287 (W.D.N.Y. July 15, 2008) in support of his argument that highly sensitive DOCCS directives can be provided to incarcerated *pro se* plaintiffs.  Dkt. No. 33 at 12.  There, however, the plaintiff alleged he had been assaulted by corrections officers and the document he moved to compel was the production of Directive 4901, "Transporting Prisoners."  *Wright*, 2008 WL 2788287, *2.  In response, the defendants objected on relevance grounds and that the material is "highly sensitive" and "should not be distributed to inmates."  *Id*.  The plaintiff then narrowed his request to the section of the directive concerning the maintenance of logs.  *Id*.

Similarly, in *Medina v. Hunt*, No. 9:05-cv-1460 (DNH/GHL), 2008 WL 398439, at *2 (N.D.N.Y. Feb. 11, 2008), the plaintiff brought a complaint against corrections officers for assaulting him while he was an inmate at a correctional facility.  The plaintiff sought a copy of the NYS Department of Corrections Employees' Manual and the defendants objected on relevance grounds and that the manual "would **likely** contain information which, if released, would impair the security of correctional facilities."  *Id*. at *5 (emphasis in the original).  Once

again, that case is clearly distinguishable from the instant matter.  First, the allegation in the

complaint was assault and, thus, the DOCCS Employees' Manual was relevant to the plaintiff's

claim; and second, there is no indication that the Employees' Manual was a "D" directive

containing confidential and highly sensitive information, such as Directive 4900 is here.

Accordingly, Plaintiff's motion to compel is denied.

## IV. CONCLUSION

**WHEREFORE**, for the reasons stated, it is hereby

**ORDERED** that Plaintiff's motion to compel, Dkt. No. 33, is **DENIED**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on the parties in

accordance with the Local Rules.[2]


Dated: March 30, 2026
        Syracuse, New York

_____
Carla B. Freedman
U.S. Magistrate Judge

---

[2] The Clerk is directed to provide Plaintiff a copy of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

2019 WL 1958310

KeyCite Yellow Flag

Distinguished by   Brown v. Barnes and Noble, Inc.,   S.D.N.Y.,   December 23, 2019

2019 WL 1958310
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Lisa D. JOHANNES, Plaintiff,

v.

Michelle M. LASLEY and United States Postal Service, Defendants.

17-CV-3899 (CBA)(AYS)
|
Signed 05/02/2019

**Attorneys and Law Firms**

Douglas Adam Milch, Wingate Russotti Shapiro & Halperin, New York, NY, for Plaintiff.

Mary M. Dickman, United States Attorneys Office Eastern District of New York, Central Islip, NY, for Defendants.

**MEMORANDUM & ORDER**

ANNE Y. SHIELDS, United States Magistrate Judge

**\*1**  Plaintiff Lisa D. Johannes ("Johannes" or "Plaintiff") commenced this action against Michelle M. Lasley ("Lasley") and the United States Postal Service ("USPS") (collectively "Defendants") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq., alleging that Plaintiff sustained serious injury and economic loss as a result of an incident that occurred on January 5, 2016, involving Plaintiff and a Postal truck driven by Lasley, a USPS employee acting in the course of her employment. See generally Complaint, Docket Entry ("DE") [1]. Plaintiff alleges she was hit by the postal truck and the collision was due to Lasley's negligence. Id.

On December 19, 2018, Plaintiff filed a letter-motion to compel production of documents. DE [18]. On February 19, 2019, this Court granted Plaintiff's motion. See Electronic Order dated 2/19/2019. Currently before the Court is Defendants' motion for reconsideration. See DE [19]. For the reasons discussed below, having considered Defendants' motion for reconsideration, the Court declines to modify its 2/19/2019 Order.

DISCUSSION

I. Legal Principles: Standard Applicable on Motions for Reconsideration

The standard for granting a motion for reconsideration is strict, and "[r]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd., 628 F. App'x 793, 796 (2d Cir. 2015)(quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)); see also Oparah v. New York City Dep't of Educ., 670 F. App'x 25, 26 (2d Cir. 2016) ("The standard for granting a motion to reconsider 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court

Johannes v. Lasley, Not Reported in Fed. Supp. (2019)

2019 WL 1958310

overlooked.' "); S.D.N.Y./E.D.N.Y. Local Civ. R. 6.3 (The moving party must "set[ ] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked.").

It is thus well settled that a motion for reconsideration is " 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite of the apple.' " Salveson v. JP Morgan Chase & Co., 663 F. App'x 71, 75-76 (2d Cir. 2016) (quoting Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012)). A motion for reconsideration is " 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.' " Salveson v. JP Morgan Chase & Co., 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016) (quoting Simon v. Smith & Nephew, Inc., 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014)), aff'd, 663 F. App'x 71 (2d Cir. 2016). Simply put, in order to prevail on a motion for reconsideration, "the moving party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." Lichtenberg v. Besicorp Grp. Inc., 28 F. App'x 73, 75 (2d Cir. 2002) (citations and internal quotation marks omitted); see also Stoner v. Young Concert Artists, Inc., 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because [a party] is dissatisfied with the outcome of his case. To do otherwise would be a waste of judicial resources.") (alteration in original).

II. The Motion

**\*2** Defendants argue that because Plaintiff's discovery motion was grated as unopposed, this Court should grant the motion for reconsideration. Defendants further argue that the documents in question are indeed protected by privilege and thus are not entitled to production.

A. Defendants' Failure to Timely Oppose

The Defendants first argue that because the Court granted Plaintiff's application as unopposed and did not base its decision on the merits, the Court should reconsider its Order and excuse Defendants' failure to oppose the motion.

Preliminary, this Court points out that Plaintiff filed her motion on December 19, 2018. While Defendants cite to the lapse of appropriations that began on December 21, 2018 and lasted through January 26, 2019, which prohibited Department of Justice attorneys from working, among the reasons for Defendants' failure to timely respond to the motion, this Court did not issue its Order granting Plaintiff's motion until February 19, 2019. Further, Defendants never sought a stay of the case during the 35-day appropriations lapse, nor sought an extension or time to respond to the motion once appropriations were restored. Recognizing the substantial time-gap between the restoration of appropriations and this Court's Order, namely some three-weeks, defense counsel then cites to "her own administrative error" as the reason for the failure to respond. See Defs' Memo at 5, DE [19-1]. Defendants have not provided a reasonable excuse and thus have failed to show the requisite good cause needed for this Court to vacate its Order.

Under Federal Rule of Civil Procedure 6(b)(1)(B), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b) (1)(B). The determination whether a party's neglect is "excusable" is, "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). In making that determination, the Supreme Court has directed courts to consider the following factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant, and (4) whether the movant acted in good faith. Id. The Second Circuit has held that the third factor—the reason for the delay, and whether it is within the reasonable control of the movant—is the most important, since the other three factors will often favor the movant. See Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003). "The equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court rule.' " Id. at 366–67 (citing Canfield v. Van Atta Buick/GMC Truck Inc., 127 F.3d 248, 249–50 (2d Cir. 1997)). Thus, "[w]here ... the rule is entirely clear ... a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test." Canfield, 127 F.3d at 249–50 (holding not clearly erroneous the district court's

2019 WL 1958310

decision that a lawyer's failure to file motion papers within the time limit established by a local rule was not excusable neglect under Rule 60(b)); see Silivanch, 333 F.3d at 367–70 (collecting cases finding no excusable neglect where counsel failed to comply with a clear deadline).

**\*3** Here, the Court finds that Defendants failed to establish that their failure to respond was a product of "excusable neglect." Counsel's excuses for her failure to adhere to the deadline are unconvincing. Counsel cites "her own administrative error" and lapse of approbations from December 21, 2019 to January 26, 2019 as the reason for her failure to respond. However, "her own administrative error" is no excuse for lack of diligence in complying with clearly established deadlines. Moreover, while the lack of appropriations that forced counsel not to work from December 21, 2019 to January 26, 2019 was surely not within her control, upon restoration of the appropriations counsel could and should have made a proper request for an extension of time under Rule 6(b). See Delacruz v. Stern, 166 F.3d 1200 at \*2 (2d Cir. 1998) ("[i]f additional time to replead was needed because of the attorney's marital problems, an application for an extension of time should have been filed."). See Turner v. Hudson Transit Lines, Inc., 1991 WL 123966, at \*3 (S.D.N.Y. July 2, 1991) ("Counsel's excuse for his untimely submission of papers is his own vacation ... counsel could have readily arranged for another attorney to cover for him during that period, or could have made a proper request for an extension of time under Rule 6(b) before leaving for vacation. Further, it would not seem impossible to draft a memorandum of law supporting an objection to a simple discovery ruling in the six days between Judge Francis's ruling and the planned start of defense counsel's vacation.").

As noted by the Second Circuit,

> [w]e operate in an environment ... in which substantial rights may be, and often are, forfeited if they are not asserted within time limits established by law ... We ... have considerable sympathy for those who, through mistakes-counsel's inadvertence or their own-lose substantial rights in that way. And there is, indeed, an institutionalized but limited flexibility at the margin with respect to rights lost because they have been slept on. But the legal system would groan under the weight of a regimen of uncertainty if which time limitations were not rigorously enforced—where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar.

Silivanch, 333 F.3d at 367-68. Accordingly, Defendants' motion for reconsideration of this Court's Order granting Plaintiff's discovery application due to Defense counsel's failure to respond is denied.

### B. The Production Is Not Privileged

Defendants claim that the prevention of manifest injustice warrants reconsideration of this Court's decision to grant Plaintiff's motion to compel production of the unredacted documents. Defendants claim the self-critical analysis privilege applies to the redactions at issue as well as the work-product privilege. However, Defendants have not cited to any controlling case law to dissuade this Court from ordering the production of the unredacted documents.

In general, a party may obtain discovery of any non-privileged matter that is relevant to a claim or defense of any party and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Nonetheless, a court has discretion to circumscribe discovery even of relevant evidence by making any order which justice requires "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); see Herbert v. Lando, 441 U.S. 153, 177 (1979).

The self-critical analysis privilege concerns situations where " 'an intrusion into the self-evaluative analysis of an institution would have an adverse effect on the [evaluative] process, with a net detriment to a cognizable public interest.' " Troupin v. Metro. Life Ins. Co., 169 F.R.D. 546, 548 (S.D.N.Y. 1996) (citations and quotation omitted). Put another way, "if a party has conducted a confidential analysis of its own performance in a matter implicating a substantial public interest, with a view

2019 WL 1958310

towards correction of errors, the disclosure of that analysis in the context of litigation may deter the party from conducting such a candid review in the future." Wimer v. Sealand Serv., Inc., 1997 WL 375661 at *1 (S.D.N.Y. July 3, 1997).

Whether the self-critical analysis privilege should be recognized in federal courts has yet to be decided by the Supreme Court or the Second Circuit. One court observed that "this particular privilege has led to a checkered existence in the federal courts." Wimer, 1997 WL 375661 at *1.

 **\*4** In Robinson v. Untied States, 205 F.R.D. 104 (N.D.N.Y. 2001), the same redactions at issue here, namely the Postal Service redacted the same sections to the same 1769 forms, were examined. The court held that such redaction was improper and ordered the Post Office to produce unredacted copies. Id. at 109. (Statements as to how the accident occurred, why it occurred, management factors that contributed to the accident, the root causes of the accident, and actions that have been or will be taken to prevent recurrence of each factor and cause are not covered by the privilege.) The Robinson court went on to find that the Form 1769 sections entitled "What actions have or will be taken to prevent recurrence of each factor and cause? Expected completion date of each?" and "explain how the preventive action will eliminate or reduce cause(s) and prevent similar accidents" were also not privileged. Id. at 109-110. The Robinson court concluded that the accident reports are prepared in the course of the Post Office's business for the purpose of preventing future accidents. Robinson held that it would be implausible to believe that the Post Office would cease its practice of investigating accidents and writing up the results, in order to the prevent future accidents, on the basis that such reports could be discoverable, ultimately finding that producing the information would not cause the Post Office injury, "thwart desirable social policies, or affect a substantial public interest." Id. at 110.

Where, as here, a party raises privilege as a basis for withholding otherwise discoverable materials, "the burden is on a party claiming the protection of a privilege to provide evidence sufficient to establish the essential elements of the privileged relationship." S.E.C. v. NIR Grp., LLC, 283 F.R.D. 127, 131 (E.D.N.Y. 2012) (citations omitted). "This burden cannot be discharged by mere conclusory or ipse dixit assertions." Id.

Waiver of privilege may occur where a party fails to list withheld documents on its privilege log. Pursuant to Federal Rule of Civil Procedure 26(b)(5)(A), a party who withholds documents on the account of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Consistent with that Federal Rule, courts typically require that parties provide a detailed privilege log for all documents withheld. See Trudeau v. N.Y. State Consumer Prot. Bd., 237 F.R.D. 325, 334 (N.D.N.Y. 2006) ("In this respect, and in order to evaluate and facilitate the determination of whether a privilege exists, courts generally require compliance with th[e] statutory mandate [of Fed. R. Civ. P. 26(b)(5)] that an adequately detailed privilege log be provided."). Fed. R. Civ. P. 26 is further supplemented by Local Civil Rule 26.2, which requires that a party withholding documents on the grounds of privilege set forth: "(i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other...." Local Civil Rule 26.2(a)(2)(A); see also Go v. Rockefeller Univ., 280 F.R.D. 165, 174 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(b)(5) and Local Civil Rule 26.2 in analyzing the sufficiency of a privilege log). In assessing the adequacy of a privilege log, courts must also ask whether it "suffice[s] to establish each element of the privilege or immunity that is claimed." A.I.A. Holdings, S.A. v. Lehman Bros., 2000 WL 1538003, at *2 (S.D.N.Y. Oct. 17, 2000) (quoting Golden Trade, S.r.L. v. Lee Apparel Co., 1992 WL 367070, at *5 (S.D.N.Y. Nov. 20, 1992)); see also Bowne of N.Y. City, Inc. v. AmBase Corp., 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (explaining that a privilege log should "identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure").

Consistent with these principles, courts in the Second Circuit have uniformly concluded that "[t]he failure of a party to list a document withheld during the course of discovery on a privileged log ... ordinarily results in a finding that the privilege otherwise asserted has been waived." Feacher v. Intercontinental Hotels Grp.,2007 WL 3104329, at *5 (N.D.N.Y. Oct. 22, 2007); see FG Hemisphere Associates, L.L.C. v. Republique Du Congo, 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005) ("As other judges

in this District and I have repeatedly held, the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege.") (citations omitted); accord Kogut v. Cty. of Nassau, No. 06-cv-6695, 2011 WL 13284714, at *4 (E.D.N.Y. Nov. 14, 2011) ("The failure of defendants to list the ... documents [in question] on a privilege log constitutes a waiver of any applicable privilege.").

**\*5** In the instant action, Defendants failed to serve a privilege log. Therefore, any potential privilege has now been waived.

In support of their claim of privilege, Defendants cite, inter alia, to Warner v. United States, a Rhode Island case for the assertion that the materials should not be disclosed. 2009 WL 3698018, *4 (D. R. I Nov. 2, 2009). However, while Defendants are correct that court found that the United States could not be compelled to produce the unredacted forms to a plaintiff in an action brought pursuant to the FCTA, the court upheld the redaction only after finding that the redacted materials were after-the-fact opinions and recommendations of an investigator." Id. at *4. Here, the Defendants failed to serve a privilege log and use the instant motion as their initial attempt to justify the claim of privilege. Defendants improperly utilize the instant motion for reconsideration to take a "second bite of the apple." Therefore, unlike the circumstances in Warner, whether the materials in question are factual, opinion or mixed motive cannot be determined. Accordingly, this Court declines to reconsider its Order granting the production of the unredacted documents.

CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration as set forth in Docket Entry No. [19] is denied. Defendants are directed to produce the unredacted documents to Plaintiff's counsel forthwith.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1958310

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4861840

KeyCite Yellow Flag

Distinguished by   United States ex rel. Ortiz v. Mount Sinai Hospital,   S.D.N.Y.,   March 11, 2016

2008 WL 4861840
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Camille MIRKIN, Plaintiff,

v.

WINSTON RESOURCES, LLC, Defendant.

No. 07 Civ. 02734(JGK)(DF).
|
Nov. 10, 2008.

**OPINION AND ORDER**

DEBRA FREEMAN, United States Magistrate Judge.

 **\*1**  In this employment discrimination action, plaintiff Camille Mirkin ("Plaintiff") claims that her former employer, defendant Winston Resources, LLC ("Defendant") unlawfully terminated her employment for reasons related to, *inter alia,* her gender, her pregnancy, and her age. Currently before this Court is a letter motion by Plaintiff to quash Defendant's deposition subpoena of Christopher Gamble, Plaintiff's supervisor at a subsequent employer, Response Companies, a company for which Plaintiff is also no longer working. (*See* Letter to the Court from Dominique N. Ferrera, Esq ., dated Oct. 10, 2008.) Plaintiff argues that evidence regarding her job performance at Response Companies is irrelevant to the claims asserted in this action and that enforcement of the subpoena would negatively affect her current and future employment prospects and subject her to unnecessary annoyance and embarrassment. (*See id.*) Defendant, on the other hand, argues that Plaintiff lacks standing to challenge the subpoena and that, in any event, the discovery sought is relevant to its defenses in the action and should be allowed. (*See* Letter to the Court from Melissa L. Morais, Esq., dated Oct. 24, 2008.) For the following reasons. Plaintiff's motion to quash is DENIED.

As a threshold matter, a plaintiff has standing to quash a subpoena of a non-party where the plaintiff asserts a legitimate privacy interest in the information sought. *See Chazin v. Lieberman,* 129 F.R.D. 97, 98 (S.D.N.Y.1990). Here, Plaintiff has a legitimate privacy interest in information regarding her performance at a subsequent employer and, therefore, has standing to bring her motion. *See During v. City Univ. of N.Y.,* No. 05 Civ. 6992(RCC)(RLE), 2006 U.S. Dist. LEXIS 10133, at \*3-4, 2006 WL 618764 (S.D.N.Y. Mar. 9, 2006), *rev'd on other grounds,* 2006 U.S. Dist. LEXIS 53684, 2006 WL 2192843 (S .D.N.Y. Aug. 1, 2006).

As for the merits of Plaintiff s motion, Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." " 'Relevance' for purposes of discovery, moreover, is synonymous with 'germane' and ... it should not be read as meaning 'competent' or 'admissible.' " *Johnson v. Nyack Hosp.,* 169 F.R.D. 550, 556 (S.D.N.Y.1996) (citation omitted). As Defendant argues, Mr. Gamble, Plaintiff's former supervisor at Response Companies, may be able to testify as to Plaintiff's lack of certain job skills, providing evidence that would be relevant to a defense that Plaintiff was terminated for legitimate, non-discriminatory reasons.

Even where the discovery sought is relevant, however, this Court must weigh a party's right to obtain that discovery against the burden imposed on the opposing party. *During,* 2006 U.S. Dist. LEXIS 53684, at \* 15, 2006 WL 2192843 (citing Fed.R.Civ.P. 26(b)(2), 26(c)). Further, the Court may issue an order to protect a party from undue annoyance or embarrassment. Fed.R.Civ.P.

2008 WL 4861840

26(c). In the circumstances of this case, the Court finds that the burden imposed on Plaintiff by Defendant's subpoena is slight and docs not outweigh Defendant's right to obtain the information sought. First, Plaintiff could have reasonably expected that matters relating to her employment performance would be disclosed in this litigation. *During,* 2006 U.S. Dist. LEXIS 53684, at * 16, 2006 WL 2192843 ("A litigant himself must reasonably anticipate that his personal matters will be disclosed, while a non-party having no stake in the litigation retains a greater expectation of privacy.") (citation and internal quotations removed). Second, as Plaintiff is no longer employed by Response Companies, and, as Plaintiff does not claim that Mr. Gamble is currently engaged in a job search on her behalf, the cases on which she relies to demonstrate an undue burden arc distinguishable. Third, although Plaintiff states that she continues to rely on Response Companies for job references, the Confidentiality Agreement already in place in this action could be extended to prevent Mr. Gamble and Response Companies from disclosing confidential information to others, thereby mitigating the burden on Plaintiff. Finally, as both parties have noted, this litigation and the underlying fact of Plaintiff s termination from Defendant's employ are already known to many in Plaintiff's industry. For this reason, the additional embarrassment caused by Mr. Gamble's deposition would be marginal, at most.

**\*2** The Court notes that, by agreement of the parties, discovery in this case is currently being held in abeyance pending the outcome of a mediation between them. The Court, however, has recently received a letter from Plaintiff's counsel, expressing concern that the scheduling of the anticipated mediation has been delayed and suggesting that, to avoid further delay, discovery and the mediation should now proceed "along parallel paths." (Letter to the Court from Dominique N. Fe rre ra, Esq., dated Nov. 5, 2008.) Under the circumstances, counsel arc directed to confer in good faith regarding a modified discovery schedule and to submit such a schedule to the Court for its consideration. Although the motion to quash the deposition of Mr. Gamble is denied, that deposition should not go forward until the parties have reached agreement on its scheduling, or the Court has issued a revised scheduling order.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4861840

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

⚑ KeyCite Yellow Flag

Distinguished by   Gross v. Lunduski,   W.D.N.Y.,   December 18, 2014

2008 WL 2788287
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Bornallah WRIGHT, Plaintiff,

v.

Glenn S. GOORD, Jr., et al., Defendants.

No. 04-CV-6003L.
|
July 15, 2008.

**Attorneys and Law Firms**

Bornallah Wright, Auburn, NY, pro se.

Emil J. Bove, Jr., Office of New York State Attorney General, Rochester, NY, for Defendants.

*DECISION & ORDER*

MARIAN W. PAYSON, United States Magistrate Judge.

### *INTRODUCTION*

 **\*1**  Plaintiff, Bornallah Wright ("Wright"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), commenced this action pursuant to 42 U.S.C. § 1983. According to his complaint, Wright alleges that various corrections officers at the Attica Correctional Facility, the facility in which Wright was incarcerated at the time, assaulted him on June 11, 2001. (Docket # 1). Currently before the Court are various discovery motions filed by Wright. (Docket 45, 58 and 64).

### *DISCUSSION*

In his first motion, Wright seeks to compel responses to several interrogatories propounded upon defendants Burlow and Turello and document requests served upon the defendants in general. (Docket # 45). The following constitutes the Decision and Order of this Court with regard to each of Wright's requests.

**A.** *Interrogatories:* Wright seeks to compel defendant Burlow's response to interrogatories 3, 4 and 5, and to compel defendant Turello's response to interrogatory 7. (Docket # 45). Each of these interrogatories seek information concerning "pulling the pin." (Docket # 45). Although plaintiff has not defined the term "pulling the pin," defendants appear to have understood Wright's interrogatories and have responded by informing him that no "pin" was pulled. (Docket # 48).

The interrogatories propounded to Burlow asked whether, when and who "pulled the pin." In response to each interrogatory, Burlow stated "not applicable." Wright has appropriately moved to compel a further response in view of the unclear meaning

2008 WL 2788287

of the term "not applicable." Counsel now has clarified that "not applicable" was meant to convey that no "pin was pulled" in connection with the June 11, 2001 events. I find this explanation satisfactory and no further response will be compelled.

I likewise determine that no further response shall be compelled from defendant Turello. From him, Wright sought to learn "[w]hat actions require the pulling of a pin." Wright has not explained why he seeks this information. Unless Wright is alleging that "the pin" should have been pulled, but was not, information about measures that were not resorted to is not relevant.

**B. *Document Production:*** Wright also moves to compel defendants' responses to numerous specifically identified document requests. The threshold requirement of discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). To be discoverable, the information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The relevance standard is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (citation omitted). *See Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine,* 951 F.2d 1357, 1368 (2d Cir.1991) (parties entitled to discovery of any matter that appears "reasonably calculated to lead to the discovery" of evidence) (quoting Fed.R.Civ.P. 26(b)(1)); *American Banana Co. v. Republic Nat'l Bank of New York, N.A.,* 2000 WL 521341, *2 (S.D.N.Y.2000) ("Rule 26 plainly allows discovery related to the claims and defenses of any party").

 **\*2**  Although the scope of discovery under the Federal Rules is broad, it is not without limitation. Indeed, Rule 26 provides that the court must limit the frequency or extent of discovery if:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Crawford-El v. Britton,* 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Even when the material in question is discoverable under the rules, "the Court still has considerable discretion to evaluate the practical realities of discovery, balancing the importance of the information against the burdens of production to decide whether fairness does or does not require production, and if so, on what terms." *Jones v. Goord,* 2002 WL 1007614, *6 (S.D.N.Y.2002).

In this matter, Wright moves to compel the production of various documents that he alleges are relevant to the claims asserted in his complaint. (Docket # 45). Each of Wright's specific requests will be addressed in turn.

**Document Request 1:** Wright's first request seeks disclosure of prison Directive No. 4901, "Transporting Prisoners," in it entirety. (Docket # 45). Defendants object to this request on the grounds that the directive is not relevant to Wright's claims and that it contains "highly sensitive" material that should not be distributed to inmates. (Docket # 48). In reply, Wright has clarified that he seeks production only of the section concerning the maintenance of logs. If defendants believe that disclosure of this specific section presents security risks that outweigh the relevance of the material to Wright's claims, they may object and explain the nature of their objection. Unless defendants file such an objection, that section of the directive shall be produced to Wright by no later than July 31, 2008.

**Document Request 2:** Wright requests documents relating to interviews of named and unnamed defendants pertaining to the incident raised in his complaint. (Docket # 45). In response to this motion, defendants have acknowledged the confusing nature of their original production and have identified specific responsive documents. (Docket # 48). Defendants have further represented

2008 WL 2788287

to the Court that they are unaware of any additional documents that would be responsive to Wright's request. (Docket # 48). Accordingly, Wright's motion is denied as moot.

**Document Request 3:** Wright's third request seeks "any and all named and unnamed defendants' Progress Index Sheets and Receipt of Complaints in their entirety." (Docket # 45). Wright has explained that this request is aimed at certain sections of the Inspector General's file concerning the June 11, 2001 events. (Docket # 45). Defendants have responded that no such investigation was conducted, and thus no responsive documents exist. (Docket # 48). Having no reason to doubt defendants' representation, Wright's motion to compel is denied. *See American Banana Co. v. Nat'l Bank of New York, N.A.,* 2000 WL 521341 at *3 ("[c]ourt cannot compel production of what does not exist").

 **\*3 Document Request 4:** Wright requests "any and all named and unnamed defendants' records of all staff members in regards to the incident." He explains that this request refers to "misconduct complaints, reprimands, investigative reports, grievances as well as index lists of any and all named and unnamed defendants that was on the 3 to 11 shift on June 11, 2001." As drafted, I find Wright's request to be overbroad and unduly burdensome. Defendants are hereby directed to conduct a search of the personnel files for the named defendants and to produce to Wright copies of any documents relating to disciplinary action taken against such defendants based upon the use of excessive force. Defendant shall also produce documents relating to any investigations by the Inspector General of the named defendants for the use of excessive force. Accordingly, Wright's motion is granted in part.

**Document Request 5:** Wright requests Employee Accident Reports for all named and unnamed defendants relating to the incident in question. (Docket # 45). The request is granted as it seeks information relevant to the claim, namely, the identities of DOCS employees involved in the incident. Whether they were injured would tend to show their involvement in the incident at issue. Accordingly, Wright's motion to compel is granted, except that defendants may redact confidential medical information contained within such reports.

**Document Request 6:** Wright seeks all "named and unnamed defendants Departmental Histories, Civilian Complaints, Use of Force Complaints, Discipline Infractions/ Complaints and recommendations." (Docket # 45). Defendants object that this request is overbroad and burdensome. (Docket # 48). This motion is duplicative of the motion made to compel production of documents sought in Request No. 4. For that reason, it is denied.

**Document Request 7:** Wright requests the "Histories of Correctional Personnel that was on duty in Block D on both shifts from 1970 to the date of your response." (Docket # 45). Defendants object to the request, arguing that his request is overbroad and burdensome. (Docket # 48). I agree. Wright's request is denied.

**Document Request 8:** In his eighth request, Wright seeks "Memos, Policies, Interagency documents, case History Sheets, Reports of Abuse/Assault on staff data and statistics form 1970 to the date of your response." (Docket # 45). Wright explains that the purpose of his request is "to establish that Attica has ... always been a facility that operated on its own accord." (Docket # 45 at 12). As above, I find this request to be overbroad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, and it is therefore denied.

**Document Request 9:** Wright requests "any and all information, Complaints included that have the greatest potential of abuse, lawsuits, directives and any and all grievances from 2000 to the date of your response." (Docket # 45). I find that this request is incomprehensible. Accordingly, Wright's motion to compel is denied.

 **\*4 Document Request 10:** Wright requests "any and all information, complaints included, in regards to medical treatment of Use of Force victims from 2000 to the date of your response." To the extent that Wright seeks documents relating to every prisoner who has sought medical treatment following an incident as to which a use of force report was prepared, it is plainly overbroad and irrelevant to the claims at issue in Wright's suit. Accordingly, it is denied.

2008 WL 2788287

**Document Request 11:** Wright requests "any and all information, Complaints included in regards to Medical treatment of the officers as a result of Assault on staff, To and From Reports, Misbehavior Reports, photographs of Use of Force victims as well as Officers from 2000 to the date of your response." (Docket # 45). This request is likewise overbroad and irrelevant to Wright's claims. It too is denied.

**Document Request 12:** Wright requests "Departmental Rules, Memos, Investigative Reports, notwithstanding Internal Reports, Fellow Citizens, colleagues and supervisor(s) complaints due to tacit authorization from 2000 to the date of your response." (Docket # 45). This request is incomprehensible and is denied.

**Document Request 14:** In his fourteenth request, Wright seeks "any and all Polices and Procedures of the Department of Correctional Services, Inspector General's Report, the Inspector General's Report on the investigation of the incident, the notes used in writing this report, and notes of Labor Relations pertaining to the incident and such similar incidents from 2000 to the date of your response." (Docket # 45). To the extent Wright seeks reports prepared by the Inspector General or Bureau of Labor Relations in connection with the incident at issue, defendants have indicated that no such reports exist. (Docket # 48). To the extent Wright is requesting documents relating to other incidents not the subject of this lawsuit, his motion to compel is denied as overbroad and irrelevant.

**Document Request 15:** Wright requests "any and all log book entries including the Watch Commanders Log Book, Memo Books, Inmate Complaints, Convict Complaints, Prisoner Complaints, Felony Complaints, Sergeant, Captain, Lieutenant, Deputy and Domestic Complaints, Time Log, entries of all and any staff member named and unnamed pertaining to the incident." (Docket # 45). Despite the request's overbreadth, defendants have identified and produced specific documents and reports relating to the incident that they believe to be responsive to his request. (Docket # 48). Defendants have further indicated that they are unaware of any additional responsive documents. Accordingly, Wright's motion is denied as moot.

**Document Request 16:** Wright requests "the Employee as well as the Department of Operations Manual in its entirety, Directive # 4910, and any and all telecommunications and Radio Run pertaining to the incident." (Docket # 45). Defendants have produced Directive # 4910 in its entirety and the table of contents of the DOCS employee manual. (Docket # 48). Defendants have also stated their willingness to produce specific portions of the DOCS manual upon request and have further indicated that they are unaware of any additional documents that would be responsive to Wright's request. (Docket # 48). I find that defendants' response is appropriate and adequate. Wright's motion is therefore denied, except that they shall produce the specific sections of the employee manual that Wright has requested. Those sections shall be produced by July 31, 2008.

 **\*5  Document Request 17:** In his seventeenth request, Wright seeks "the Individual Security Post pertaining to the incident of any and all named and unnamed defendant's State Commission of Corrections Minimum Standards for County Jail, Attica: the Official report of the New York State Special Commission on Attica, and any and all other such similar reports and documents whether they are in the past, present and future (current)." (Docket # 45). Although defendants fail to reference Document Request 17 in their response to Wright's motion, in their response to his original request, defendants produced a copy of the A-Block post assignments for June 11, 2001 and objected to disclosure of the Attica report on the grounds that it was not relevant to the claims or defenses of any party and would be burdensome to produce. (Docket # 45). I too fail to see the relevance of the Attica report to the case at hand, and the request is therefore denied.

**Document Request 18:** Wright's final request seeks "any and all letters and corresponding letters he wrote to Commissioner Glenn S. Goord, Jr., as well as the past and present Inspector General: Brian Malone and Mark Miller in its entirety starting from 1998 to the date of your response." (Docket # 45). Defendants indicate that they have produced those letters that are relevant to Wright's complaint and argue that production of all unrelated correspondence would be unduly burdensome and irrelevant. (Docket # 48). Wright has failed to explain how the unrelated correspondence is relevant to the claims or defenses of any party. Thus, his motion to compel their production is denied.

2008 WL 2788287

## *REMAINING MOTIONS*

Following the filing of the above-discussed motion to compel, Wright moved for sanctions, including a default judgment, based upon defendants' responses to Wright's discovery demands. (Docket # 58). That motion is denied. Many of defendants' objections have been upheld by this Court. As to those that have not, no basis exists to question defendants' good faith in interposing them. Accordingly, Wright's motion to compel and for sanctions is denied.

On July 19, 2007, Wright filed a motion "for a civil subpoena duces tecum." (Docket # 64). Although the precise nature of the relief Wright seeks is unclear, it appears that he seeks the production of certain documents created during the period January 1, 2005 to September 14, 2005. Defendants are hereby directed to determine whether any documents responsive to paragraph 3 of this Court's Scheduling Order dated December 3, 2004 (Docket # 19) have been created during the period January 1, 2005 to September 14, 2005. If so, they shall be produced to Wright by no later than July 31, 2008. On this basis, Wright's motion is granted in part. In all other respects, it is denied.

## *CONCLUSION*

For the foregoing reasons, it is this Court's Decision and Order that Wright's motion to compel **(Docket # 45)** is **GRANTED in PART** and **DENIED in PART.** It is the further Order of this Court that Wright's motion to compel and for sanctions **(Docket # 58)** is **DENIED.** Wright's motion for a civil subpoena duces tecum **(Docket # 64)** is **GRANTED in PART** and **DENIED in PART.**

**\*6** In addition, it is hereby

ORDERED, that the Scheduling Order shall be amended as follows:

1. All discovery in this case shall conclude on **August 29, 2008.** All motions to compel discovery shall be made returnable on or before **August 29, 2008.**

2. All dispositive motions shall be filed no later than **October 31, 2008. NOTE:** If the dispositive motion is filed against a party who is appearing in this action *pro se,* the moving party must include the following advisement:

> **PLEASE BE ADVISED,** that pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, when a motion for summary judgment is made and properly supported, you may not simply rely upon the complaint [and amended complaint, if one has been filed], but you must respond, by affidavits or as otherwise provided in the rule, setting further specific facts showing that there are genuine issues of material facts for trial. Any factual assertions in our affidavits will be accepted by the Court as being true unless you submit affidavits or other documentary evidence contradicting our assertions. If you do not respond to [the moving party's] motion as described above, summary judgment, if appropriate, may be entered against you. **If summary judgment is entered against you, your case against the moving party will be dismissed.**

> **PLEASE BE FURTHER ADVISED,** that pursuant to Local Rule 56 of the Western District of New York, you must include a separate, short, concise statement of any material facts as to which you contend there exists a genuine issue for trial. In the absence of such a statement, all material facts set forth in the moving party's Local Rule 56 Statement will be deemed admitted.

3. Responding papers shall be filed by **November 28, 2008.** Reply papers, if any, shall be filed by **December 12, 2008.** The motion will be taken under advisement without oral argument.

2008 WL 2788287

4. If no dispositive motions are filed, defense counsel shall notify the Court in writing on or before the dispositive motion deadline date. No extension of the above cutoff dates will be granted except upon written joint motion, filed prior to the cutoff date, showing good cause for the extension.

**In accordance with Fed.R.Civ.P. 16(f), if a party or party's attorney fails to obey this scheduling order or fails to participate in good faith, this Court will enter appropriate sanctions against that party or that party's attorney, including dismissal of this action, if appropriate.**

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 2788287

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 398439

2008 WL 398439
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Anthony MEDINA, Plaintiff,

v.

J. HUNT; W. Sprague; John Michael; and Raymond Boyea, Defendants.

No. 9:05–CV–1460 (DNH)(GHL).
|
Feb. 11, 2008.

**Attorneys and Law Firms**

Anthony Medina, Alden, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Jaime Irene Roth, Esq., Assistant Attorney General, of Counsel, Albany, NY, for the Defendants.

**DECISION and ORDER**

GEORGE H. LOWE, United States Magistrate Judge.

 **\*1** Presently before the Court is Plaintiff Anthony Medina's motion to compel discovery. Dkt. No. 33. Defendants have responded in opposition to Plaintiff's motion. Dkt. No. 41–42. Plaintiff has submitted a Reply. Dkt. No. 47.

Plaintiff's motion to compel relates to Plaintiff's Interrogatories and First and Second Requests for Production of Documents ("RFP"). Dkt. No. 33–2 at 12–27 (Exhibit 4) and Dkt. No. 42 at 1–5. Specifically, the motion relates only to the following discovery requests: (1) Interrogatories 2, 4, 6, 7, 16, and 22; (2) requests 1, 2, and 6 of the First RFP; and (3) requests 2–4 and 6–8 of the Second RFP. Dkt. No. 33 at 6–31. Accordingly, the Court will only address the adequacy of the responses to those requests. [1]

1    After receiving Defendants' responses to his Interrogatories and First RFP, Plaintiff made good faith efforts to resolve disputes with respect to Interrogatories 4 and 16, as well as requests 1, 2, and 4–6 of his First RFP. *See* Dkt. No. 33–2 at 28–35 (Exhibit 5). Plaintiff also made good faith efforts to resolve discovery disputes with respect to the Second RFP. *See* Dkt. No. 47 at 18–21.

**I. Interrogatories**

  **A. Interrogatories 2 and 4**
Plaintiff asked for the identity of all witnesses "who have knowledge of the facts relating to the use of force incident of December 5, 2003" and the name, address, and identifying information of "each person claimed to be a witness to, or has any knowledge of, any occurrence alleged in the complaint." Dkt. No. 33–2 at 13–14. In response to each interrogatory, Defendants responded that "John T. Hunt, Jr., William Sprague, Sergeant John Michael, John M. Rosati, Raymond Boyea, and Walter Whitman were witnesses to the incident." *Id.* Plaintiff objects to these responses as incomplete. Dkt. No. 33 at 9–14. Plaintiff argues that many more people have knowledge of or information regarding the December 5, 2003 incident including, but not limited to, officials with knowledge that other prisoners have been assaulted in the same location that Plaintiff was assaulted, "other prisoners

2008 WL 398439

or correction officers [who] observed a portion of the December 5, 2003 altercation," and "the person designated to clean [Plaintiff's] blood" which was on the floor and the walls. *Id.*

Defendants presumably have responded to these requests fully and to the best of their knowledge. However, if in fact they know of additional witnesses they of course should serve a supplemental response. Plaintiff's argument about "officials with knowledge that other prisoners have been assaulted in the same location that Plaintiff was assaulted" is not relevant to these requests.

Plaintiff also asked for the addresses of any of the witnesses identified by the Defendants. Defendants refused to provide addresses because such "information is private and confidential." Dkt. No. 33–2 at 14. Plaintiff now clarifies that he does not seek the home addresses for the witnesses, but the business addresses. Dkt. No. 33 at 13. Defendants are directed to provide Plaintiff with the official titles and business addresses of John T. Hunt, Jr., William Sprague, Sergeant John Michael, John M. Rosati, Raymond Boyea, and Walter Whitman. Since the Defendants have otherwise substantially complied with Plaintiff's Interrogatories 2 and 4, Plaintiff's motion is denied in all other respects as to these interrogatories.

### B. Interrogatory 6

**\*2** Plaintiff asks for the identity of "all persons by complete name and address ... who made a written or oral statement relating to the use of force incident of December 5, 2003." Dkt. No. 33–2 at 15. Defendants responded with eight names. *Id.* Plaintiff asserts that "[e]very individual who made a statement was not identified. The Superintendent of the prison made a statement, but his name is not agmonst [*sic* ] those provided. With full disclosure, the Court will see that names are missing from the defendants' answer." Dkt. No. 33 at 15. In response, Defendants state:

> Plaintiff complains that the name of the Superintendent was not provided, and plaintiff believes he made a statement. To the extent this information is sought by plaintiff, the Superintendent's name is Gary Greene, and his address is Great Meadow C.F., Comstock, NY12821–0051. This information was not previously provided because plaintiff quoted the Superintendent in the Complaint, at ¶ 44, and defendants therefore did not reasonably interpret the question to include information that plaintiff already possessed.

Dkt. No. 41 at 4. Defendants are directed to provide Plaintiff with the official titles and business addresses of the parties identified in response to Interrogatory 6. Since the Defendants have otherwise substantially complied with Plaintiff's Interrogatory 6, Plaintiff's motion is denied in all other respects as to this interrogatory.

### C. Interrogatory 7

Plaintiff asked Defendants to identify "all documents, reports and records ... created and compiled relating to the December 5, 2003 incident." Dkt. No. 33–2 at 15. Plaintiff complains that Defendants' answer "makes no mention of the Use of Force Log Book," any documents "created and contained within the disciplinary record," or the Inspector General's files. Dkt. No. 33 at 16. Defendants state that they produced the Use of Force Log Book in response to Plaintiff's request for production, "so clearly the omission was not intended to obfuscate or resist discovery." Dkt. No. 41 at 4–5; *see also* Dkt. No. 33–2, Exhibit 4. Because the Court will discuss Plaintiff's access to his disciplinary records and the Inspector General's report separately in this Order (those items are part of Plaintiff's production requests), and Defendants have otherwise substantially complied with this Interrogatory, Plaintiff's motion is denied in this regard, save for what is ordered produced with respect to the production requests.

### D. Interrogatory 16

Plaintiff asks Defendants to identify "all statutes, ordinances, rules, policies, regulations, directives, manuals and memoranda which addresses the use of force and excessive use of [force] by a correctional employee towards an inmate." Dkt. No. 33–2 at

17. Defendants responded by citing two DOCS Directives addressing the use of force. *Id.* at 18. Plaintiff finds the response to be incomplete, apparently believing that there are other legal citations relevant to use of force by correctional officers against inmates. Dkt. No. 33 at 18. Plaintiff seeks citations to statutes, regulations, directives, manuals, and memoranda. *Id.* at 17–18. Plaintiff's request is far-reaching and will not be granted. Defendants have adequately responded to Plaintiff's request with citations to documents within the Department of Corrections that might not be readily available to Plaintiff.[2] The Court will not direct the Defendants to search further. Plaintiff's motion is denied in this respect.

[2]   The Court does, however, address the issue of production of the DOCS Employees' Manual below.

### E. Interrogatory 22

**\*3** Plaintiff asks "[how] come Kathrine Muller's written complaint pursuant to Article 75 of the Civil Service Law, concerning the December 5, 2003 incident involving plaintiff, sent to DOCS central office was not filed?" Dkt. No. 33–2 at 19. Defendants responded as follows:

> After a diligent search of DOCS records, no such written complaint has been found. Records do reveal that Ms. Muller contacted DOCS via telephone on December 8, 2003, and that an investigation into her allegations was conducted by the DOCS Inspector General.

*Id.* The Court cannot direct a party to produce what it says is unavailable, particularly when Plaintiff offers no proof to show that it does exist. This aspect of Plaintiff's motion is denied.

## II. First RFP

### A. Request 1

Plaintiff requests "[a]ll documents comprising the complete institutional and guidance/counseling file of plaintiff." Dkt. No. 33–2 at 24. Defendants object because the request is "overly broad, not relevant to the subject matter involved in the pending action, unduly burdensome, and that it is not reasonably calculated to lead to the discovery of admissible evidence." *Id.* Plaintiff states that he needs to review the files because he has recently discovered that references to the December 5, 2003 incident, which were supposed to be expunged, were not. Plaintiff asserts that any references still in the files would therefore be relevant to Plaintiff's claims. Dkt. No. 33 at 22–23. In response to Plaintiff's motion, Defendants have submitted an affidavit from Valerie Grover, the Inmate Records Coordinator at Southport Correctional Facility. Dkt. No. 41 at 7–8. Grover states that the Plaintiff's institutional file is approximately 3–4″ thick. *Id.* at 7. She further states that before an inmate may review his institutional file, it must be reviewed by her, or one of her staff, "and appropriate redactions must be made to prevent disclosure of sensitive information that it may contain. This is extremely time consuming where the file is as large as inmate Medina's." *Id.* at 8. Grover also states that she currently has "a wait list of approximately seven inmates who have requested this review, and whose files must be reviewed and appropriately redacted before [she] could begin this process for inmate Medina."[3] *Id.* Grover states that, while complying with plaintiff's request is "feasible," it is "highly burdensome." *Id.* at 7. Grover is "not in possession of [Plaintiff's] guidance file, which is maintained elsewhere in this facility." *Id.* As a compromise, Plaintiff suggests that Defendants allow Plaintiff to **inspect** both files, identify what documents he needs from the files, and obtain copies of the requested documents. Dkt. No. 33–2 at 33.

[3]   The inmates on the waiting list requested review of their files pursuant to the Freedom of Information Law. *Id.* at 8.

Given the problems associated with the production or inspection of these files, and the dubious relevance of the information sought, Plaintiff's motion is denied with respect to this Request.

Case 9:24-cv-01549-DNH-CBF    Document 37    Filed 03/30/26    Page 23 of 24

### B. Request 2

**\*4** Plaintiff requests "[a]ll written statements, original or copies, identifiable as reports created and compiled relating to the December 5, 2003 incident alleged in the complaint, made by prison and civilian employees or the NYS Department of Correctional Services and prisoner witnesses." Dkt. No. 33–2 at 24–25. Defendants object to production as overbroad. *Id.* at 25. Defendants also object to the request insofar as it applies to the DOCS Inspector General's file regarding the incident because the file is "privileged pursuant to New York Civil Rights Law § 50–a, and the disclosure of witness statements contained therein could compromise prison safety and security." *Id.* Defendants did, however, produce to Plaintiff a copy of Plaintiff's grievance relating to the December 5, 2003 incident, as well as "the resulting investigation and response, and the use of force report pertaining to the incident." *Id.* Plaintiff argues (1) that New York Civil Rights Law § 50–a does not govern federal discovery; (2) the Inspector General's file was "created as a result of the December 5th incident being administratively deemed excessive and by plaintiff's complaints;" (3) defendants bare assertions that disclosure of witness statements within the files will compromise safety and security is "without merit and self-serving;" and (4) defendants have not properly asserted their claim of privilege. Dkt. No. 33 at 24–29.

Defendants have made no showing that there are "specific harms likely to accrue from disclosure of specific materials." *King v. Conde,* 121 F.R.D. 180, 189 (E.D.N.Y.1998) (Weinstein, D.J.). *See also, Watson v. Scully,* Civ. No. 87–0571, 1998 WL 73390 (S.D.N.Y. July 1, 1988), *Thompson v. Keane,* Civ. No. 95–2442, 1996 WL 125659 (S.D.N.Y. Mar.20, 1996), *Giles v. Coughlin,* Civ. No. 94–6385, 1998 WL 23223 (S.D.N.Y. Jan.13, 1998). Furthermore, "state laws of privilege do not govern discovery in federal cases" (*see Melendez v. Greiner,* No. 01 Civ. 7888, 2003 U.S. Dist. LEXIS 19084, at \*5, 2003 WL 22434101 (S.D.N.Y.2003),

Defendants' objections are overruled at this time. Defendants are directed to, within thirty days, either produce the DOCS Inspector General's report, or provide a specific and compelling reason for not doing so because of institutional safety and security concerns and/or issues of privilege.[4] If Defendants choose this latter course, any contention that correctional facility security would be compromised by the requested disclosure must be supported by an affidavit from an appropriate DOCS official, setting forth specific facts supporting that claim, and copies of the documents should be submitted to the Court for *in camera* review. Defendants should specifically indicate which parts of the report they believe are privileged and subject to redaction. Plaintiff shall be copied on the cover letter to the Court so that he is aware that such a submission has been made, but he need not be provided copies of the enclosures.

4    Defendants may redact personal information such as social security numbers, home addresses, and family information.

### C. Request 6

**\*5** Plaintiff requests a "true and complete copy of the NYS Department of Corrections Employees' Manual." Dkt. No. 33–2 at 26. Defendants object on the grounds of relevancy. *Id.* Plaintiff argues that information in the Manual concerning the use of physical force by correctional officers and retaliation against prisoners for exercising their constitutional rights is relevant to his action. Dkt. No. 33 at 23–24. In response to this motion, Defendants claim that their objection to production of the Manual was proper, since it "would **likely** contain information which, if released, would impair the security of correctional facilities." Dkt. No. 41 at 5 (emphasis supplied).

Defendants are directed to, within thirty days of the filing date of this Order, produce to Plaintiff those portions of the DOCS Employees' Manual pertaining to the use of force by correctional officers or retaliation against prisoners by correctional officers, or provide a specific and compelling reason for not doing so because of institutional safety and security concerns. If Defendants choose this latter course, any contention that correctional facility security would be compromised by the requested disclosure must be supported by an affidavit from an appropriate DOCS official, setting forth specific facts supporting that claim, and copies of the documents should be submitted to the Court for *in camera* review. Defendants should specifically indicate which parts of the Manual they believe are privileged. Plaintiff shall be copied on the cover letter to the Court so that he is aware that such a submission has been made, but he need not be provided copies of the enclosures.

2008 WL 398439

### III. Second RFP [5]

[5] Plaintiff states that "[d]emands 1, 5, and 9 are no longer sought." Dkt. No. 47 at 7. Requests 3 and 4 relate to production of DOCS Inspector General's files and the DOCS Employee Manual. These requests have already been addressed in Sections II. B and C, *supra.*

#### A. Request 2

Plaintiff asks for copies of the "actual photographs taken of the place of incidents, i.e. walls, floors, doorways." Dkt. No. 42 at 2. Defendants indicate that no such photographs exist. While Plaintiff argues that Defendants' Interrogatory responses indicated that such photographs did exist, that does not appear to be the case. The only reference to photographs in the Interrogatory responses is to "photographs taken of plaintiff's injuries." *See* Dkt. No. 33–2 at 17. This portion of Plaintiff's motion is denied.

#### B. Request 6

Plaintiff seeks production of various DOCS directives. Dkt. No. 42 at 2. Defendants have produced some, but not all of the directives, alleging that the production of some **could** impair the security of the facility and the safety of correctional staff and inmates. *Id.* at 3. Since Defendants provide no information whatsoever as to how production of the remaining directives "could" impair security, the objection is overruled. Defendants are directed to, within thirty days of the filing date of this Order, produce copies of the remaining directives to Plaintiff or provide a specific and compelling reason for not doing so because of institutional safety and security concerns. If Defendants choose this latter course, any contention that correctional facility security would be compromised by the requested disclosure must be supported by an affidavit from an appropriate DOCS official, setting forth specific facts supporting that claim, and copies of the documents should be submitted to the Court for *in camera* review. Defendants should specifically indicate which parts of the Directives they believe are privileged. Plaintiff shall be copied on the cover letter to the Court so that he is aware that such a submission has been made, but he need not be provided copies of the enclosures.

#### C. Requests 7 and 8

 **\*6** Plaintiff requested "the Master Index for all record documents maintained by the NYS Department of Corrections" as well as "the Master Index for all records and documents maintained at Great Meadow." Dkt. No. 42 at 4. While Defendants initially alleged that no such documents existed, *see id.,* they later produced to plaintiff the Master Index of Great Meadow documents. Dkt. No. 59 at 1. After receiving further information from Plaintiff, Defendants now acknowledge that a Master Index of Central Office records does exist, and they will provide it to Plaintiff upon payment of copying costs in the amount of $32.50. Defendants are directed to provide a copy of the Master Index of Central Office records to Plaintiff upon his payment of the copying costs.

**WHEREFORE,** it is hereby

**ORDERED,** that Plaintiff's motion to compel (Dkt. No. 33) is **GRANTED** in part and DENIED in part, as set forth above. Defendants must serve supplemental responses and produce required documents **within THIRTY (30) DAYS** of the filing date of this Order, and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Order on the parties in accordance with the Local Rules.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 398439

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.